# EXHIBIT "A"

| Attorney(s): | Alan M. Lebensfeld, Esq. | **SERVED ON** |
| Attorney Id No.: | 013571989 | |
| Law Firm: | Lebensfeld, Sharon & Schwartz P.C. | APR 2 7 2017 |
| Address: | 140 Broad Street | DM |
| | Red Bank, NJ 07701 | |

| Telephone No.: | (732) 530-4600 |
| Fax No.: | (732) 530-4601 |
| E-mail: | alan.lebensfeld@lsandspc.com |
| Attorney(s) for Plaintiff(s): Alfieri, LLC and Environmental Program Management Corporation |

---

**Alfieri, LLC and Environmental Program Management Corporation**

Plaintiff(s)

vs.

**Zurich American Insurance Company, et al**

Defendant(s)

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION

**MIDDLESEX** COUNTY

DOCKET NO.: **MID-L-2182-17**

CIVIL ACTION

**Summons**

---

**FROM THE STATE OF NEW JERSEY**

To the Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is provided and available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $ 175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

31 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A - CN 10792
Rev. 11/14   P2/15

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510      Page 1

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey statewide hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A directory with contact information for local Legal Services Offices and Lawyer Referral Services is provided and available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated:   **April 20, 2017**

**Michele M. Smith, Clerk**   *Clerk of the Superior Court*

Name of Defendant to be Served: **Zurich American Insurance Company, et al**

Address of Defendant to be Served: **1299 Zurich Way**

**Schaumburg, IL  60196-1056**

31 - Summons - Law or Chancery Divisions
Superior Court - Appendix XII-A - CN 10792
Rev. 11/14   P2/15

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510      Page 2

# Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Floor
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main Street
Hackensack, NJ 07601
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Floor, Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice, First Floor
101 South Fifth Street, Suite 150
Camden, NJ 08103
LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY**
Deputy Clerk of the Superior Court
9 North Main Street
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street, P.O. Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake, First Floor, Court House
1 North Broad Street
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Department
Brennan Court House, First Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street, P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY**
Deputy Clerk of the Superior Court
Middlesex Vicinage
Second Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY**
Morris County Courthouse
Civil Division
Washington and Court Streets
P.O. Box 910
Morristown, NJ 07963-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY**
Deputy Clerk of the Superior Court
First Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

*Updated: 8/21/13*


Powered by
HOTdocs

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 8

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633

TRACK ASSIGNMENT NOTICE            APR 2017

COURT TELEPHONE NO. (732) 519-3728
COURT HOURS  8:30 AM - 4:30 PM

                         DATE:    APRIL 12, 2017
                         RE:      ALFIERI LLC VS ZURICH AMERICAN INSURANCE CO
                         DOCKET:  MID L -002182 17

        THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

        DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

        THE MANAGING JUDGE ASSIGNED IS:  HON JAMIE D. HAPPAS

        IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (732) 519-3737 EXT 3737.

        IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
        PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                         ATTENTION:
                                   ATT: ALAN M. LEBENSFELD
                                   LEBENSFELD SHARON & SCHWARTZ P
                                   140 BROAD STREET
                                   RED BANK        NJ 07701

JUMPIE0

Alan M. Lebensfeld, Esq.
Attorney ID # 013571989
LEBENSFELD SHARON & SCHWARTZ P.C.
140 Broad Street
Red Bank, New Jersey 07701
(732) 530-4600
alan.lebensfeld@lsandspc.com
*Attorneys for Plaintiffs Alfieri, LLC and*
*Environmental Program Management Corporation*

FILED & RECEIVED #3

2017 APR 11  A 11: 47

CIVIL OFFICE
MIDDLESEX VICINAGE

|  |  |
|---|---|
| ALFIERI, LLC and ENVIRONMENTAL PROGRAM MANAGEMENT CORPORATION, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION: MIDDLESEX<br>: COUNTY |
| Plaintiffs, | : DOCKET NO. MID-L 2182-17 |
| vs. | : |
| ZURICH AMERICAN INSURANCE COMPANY, CRC INSURANCE SERVICES, INC., SCOTT C. HANDWERGER and A. LOGAN INSURANCE BROKERAGE, INC., | : __COMPLAINT__ |
| Defendants. | : |

Plaintiffs **ALFIERI, LLC** ("Alfieri") and **ENVIRONMENTAL PROGRAM**

**MANAGEMENT CORPORATION** ("EPMC"), by their attorneys, Lebensfeld Sharon &

Schwartz P.C., as and for their Complaint herein, state as follows:

## SUMMARY OF ACTION

This action arises out of a New Jersey Workers Compensation and Employers

Liability Insurance Policy (the **"WC Policy"**) issued to Alfieri by Defendant Zurich

American Insurance Company (**"Zurich"**) and its "producer," Defendant CRC Insurance

Services, Inc. (**"CRC"**), for the benefit of EPMC, a named insured thereunder. (Zurich and

CRC hereinafter are referred to collectively as the **"Insurance Defendants"**)  The WC

Policy was procured by Plaintiffs' insurance brokers, Defendants Scott C. Handwerger

(**"Handwerger"**) **and** A. Logan Insurance Brokerage, Inc. (**"Logan"**) (Handwerger and Logan hereinafter are referred to collectively as the **"Broker Defendants"**).

During the initial term of the WC Policy, without notice to Plaintiffs, in violation of N.J.S.A. 34:15-81 and in material breach of the express provisions of the policy itself, the Insurance Defendants removed EPMC as a named insured thereunder and cancelled its coverage.  In connection therewith, the Insurance Defendants improperly and without authority gave notice of the cancellation to the Broker Defendants (instead of Plaintiffs), who failed to give to notice to, or to advise, Plaintiffs thereof.

Following expiration of the term of the WC Policy, the Broker Defendants, on behalf of Plaintiffs, procured a renewal policy from the Insurance Defendants (the **"Renewed WC Policy"**), but failed to advise Plaintiffs that EPMC previously had been removed as a named insured thereunder and thus no longer possessed worker's compensation and employers liability insurance.  (**"WC Insurance"**)

During the term of the Renewed WC Policy, an employee of EPMC – one Michael Moriarty (**"Moriarty"**) – allegedly sustained a serious work-related injury, with respect to which Zurich has refused to provide coverage.  As a result, Moriarty filed a Claim Petition with the State Department of Labor and Workforce Development, Division of Workers' Compensation, which proceeding presently is pending before the New Jersey Workers' Compensation Court (the **"WC Action"**) and remains unresolved.

Plaintiffs now seek: (i) a declaratory judgment against the Insurance Defendants, requiring them to provide workers compensation and employers liability insurance coverage to EPMC for the benefit of Moriarty; (ii) an award of damages against Zurich for breach of contract; (iii) an award of damages against Logan for breach of contract; (iv) an award of

damages against Logan for breach of the implied covenant of good faith and fair dealing; (v) an award of damages against the Broker Defendants for professional malpractice and/or gross negligence; (vi) an award of damages against CRC for professional malpractice and/or gross negligence; and (vii) an award of damages against the Broker Defendants based on the principles of promissory estoppel.

**THE PARTIES**

1.      Alfieri is a New Jersey limited liability company, which maintains its principal offices and place of business located at 399 Thornall Street in Edison, New Jersey 08837.

2.      EPMC is a New Jersey corporation, which maintains its principal offices and place of business c/o Alfieri and located at 399 Thornall Street in Edison, New Jersey 08837.

3.      Upon information and belief, Zurich is a member company of the Zurich Insurance Group, a Swiss conglomerate.  Zurich maintains its principal offices and place of business located at 1299 Zurich Way in Schaumburg, IL 60196-1056.

4.      Zurich is a commercial property-casualty insurance provider licensed to conduct business within the State of New Jersey.  Among other things, Zurich provides WC Insurance ("**WC Insurance**") to companies located in New Jersey and elsewhere.

5.      Upon information and belief, CRC is an Alabama corporation, which maintains its principal offices and place of business located at 50 Jericho Quadrangle, Ste. 110, in Jericho, New York 11753-2726.

6.      CRC is a wholesale insurance broker (represented in the WC Policy and Renewed WC Policy to be the "producer" of said policies), which is licensed to conduct business in the State of New Jersey.

3

7.     Among other things, CRC was the insurance producer/wholesale broker jointly engaged by Zurich and the Broker Defendants to place and issue both the WC Policy and the Renewed WC Policy.

8.     Upon information and belief, Logan is a New York corporation, which maintains its principal offices and place of business located at 260 West 36th Street, 9th Floor in New York, New York 10018.

9.     Logan is a retail insurance broker which procures and places, among other things, WC Insurance coverage for employers and their employees located within the State of New Jersey and elsewhere.

10.    At all relevant times hereto, Handwerger was Logan's President and Chief Executive Officer, and maintained his principal offices and place of business located at 260 West 36th Street, 9th Floor in New York, New York 10018.

11.    At all relevant times herein, Logan and Handwerger served as retail insurance brokers for Plaintiffs and procured and placed, among other insurance coverages, the WC Policy and the Renewed WC Policy on behalf of Plaintiffs.

12.    Defendants each conduct business within the State of New Jersey and thus are subject to the jurisdiction of this Court.

**DEFENDANTS' ISSUANCE OF THE WC POLICY**

13.    Prior to obtaining the WC Policy which became effective as of June 1, 2014 for a one-year term (i.e., until May 31, 2015), Alfieri had procured separate, "one off" WC Insurance policies covering itself and each of its affiliated companies (including, but not limited to, EPMC) through a retail broker other than the Broker Defendants, and through an insurer/producer other than the Insurance Defendants.

4

14.     On October 29, 2013 and based upon Handwerger's prior advice that multiple "one off" WC Insurance policies were not required for Alfieri and its affiliates (as opposed to a single policy covering all of them), Alfieri requested Handwerger to further research the issue and to confirm that his prior advice was accurate.

15.     In connection with the foregoing, Alfieri provided the Broker Defendants with a written chart setting forth the ownership structure of Alfieri and of each of its affiliated companies, including, but not limited to, EPMC. The chart disclosed, among other things, that Alfieri and EPMC did not share the same majority ownership.

16.     On May 20, 2014, Handwerger forwarded to Alfieri a proposal received from the Insurance Defendants, pursuant to which Zurich proposed to issue a single WC Insurance policy, with Alfieri listed as the named insured and Alfieri's affiliates (including EPMC) listed as additional insureds.

17.     On May 26, 2014, after reviewing the aforesaid WC Insurance proposal, Alfieri forwarded an email to Handwerger, inquiring: "do you still feel [separate WC Insurance policies] are not necessary? Please see attached ownership chart and advise if you think additional policies are necessary."

18.     In response to Alfieri's inquiry as aforesaid, Handwerger again reiterated his prior advice to Plaintiffs that separate WC Insurance policies were not required, and that Alfieri and its affiliates (including EPMC) lawfully could be covered by a single policy issued by the Insurance Defendants.

19.     In express reliance on Handwerger's advice, counsel and insurance expertise as aforesaid, Alfieri then directed the Broker Defendants to procure, and through CRC the Broker Defendants did place with Zurich, effective as of June 1, 2014, the WC Policy,

5

insuring Alfieri and each of its affiliated entities (including, but not limited to, EPMC) in a single policy through May 31, 2015.

20.     Pursuant to the express terms of the WC Policy, it could not be changed or cancelled (in whole or in part) unless "not less than ten days advance written notice stating when the cancellation is to take effect" was mailed by the Insurance Defendants to the insureds (Alfieri and EPMC) at the insureds' "mailing address shown in Item 1 of the Information Page" of the policy.

21.     The "mailing address shown in Item 1 of the Information Page" of both the WC Policy and the Renewed WC Policy was "Alfieri, LLC, 399 Thornall St, STE 15, Edison NJ 08837-2236."

22.     On July 8, 2014, Alfieri advised the Broker Defendants that EPMC, which theretofore had no employees, had obtained an employee, then inquiring: "do you need anything from Environmental [i.e. EPMC]" to maintain the WC Insurance coverage?  In response thereto, the Broker Defendants advised Alfieri: "we are all set.  Nothing else required at this time."

23.     On September 4, 2014, the Broker Defendants wrote to Alfieri, advising it as follows:  "Zurich is requesting some additional information due to a letter they received from the Workers Compensation Bureau regarding some named insureds [including EPMC].  They are requesting the attached form completed and returned as soon as possible."

24.     On September 9, 2014, Alfieri provided to the Broker Defendants a completed "ERM-14" form, as well as a full ownership schedule for EPMC and the other Alfieri affiliates who were listed as named insureds in the WC Policy. No further information was requested from Alfieri by the Broker Defendants.

## EPMC'S REMOVAL AS A NAMED INSURED ON THE WC POLICY

25.     On or about October 16, 2014 and unbeknownst to Plaintiffs, the New Jersey Compensation Rating and Inspection Bureau ("CRIB") sent a letter to Zurich regarding the WC Policy (the "CRIB Letter"), advising Zurich that: (i) it was improper for EPMC and the other named Alfieri affiliates to be insured under a single policy (the WC Policy) as those entities did not share common majority ownership with Alfieri; and (ii) "an amending endorsement will be needed to remove [EPMC] from the captioned policy.  If coverage is needed for these risks, the additional policies should be written at manual premium."

26.     Upon information and belief, on or about November 3, 2014, CRC contacted the Broker Defendants – but not Plaintiffs – to advise them of the CRIB Letter, to which the Broker Defendants responded:  "All those entities … [including EPMC] are owned by insured (Father & Son).  What do they need to provide to satisfy NJ CRIT?"

27.     The Broker's representation to the Insurance Defendants as aforesaid was intentionally false and misleading.  As Handwerger previously had been informed by Plaintiffs in writing, Alfieri was owned by Michael Alfieri; EPM was owned by Christine Alfieri Joseph and Jennifer Alfieri Frank, Michael Alfieri' sisters.

28.     On November 5, 2014 (at 10:45 a.m.), CRC (via email) forwarded a copy of the CRIB Letter to the Broker Defendants – but not to Plaintiffs –, advising them of the "NJ Comp problem," and stating: "they were going to need to provide ownership information on an ERM-14 … or a signed statement from the insured to support combining all of these entities. Right now the information NJ has on hand doesn't support it." (emphasis supplied) .

29.     On November 5, 2014 (at 11:59 a.m.), the Broker Defendants emailed Alfieri and EPMC, providing them with a copy of the CRIB Latter and advising as follows: "The

Workers compensation Board as (sic) advised Zurich that they are going to need ownership information on a signed statement on your letterhead to support combining all of these entities. Right now the information NJ has on hand doesn't support it."

30.    On November 5, 2014 (at 12:01 p.m.) and contrary to CRIB's/CRC's specific instructions and directions as aforesaid, Handwerger (via email) advised Cynthia DeLeon (Logan's Marketing Director) that all Logan needed to furnish to CRC was "a simple letter stating that there is common ownership on the entities listed." Alfieri was copied on Handwerger's email.

31.    On November 7, 2014, Alfieri responded to Handwerger's aforesaid email, inquiring: "Doesn't it depend on how they define common ownership."  Handwerger then advised Alfieri not to be concerned; that he and Logan would take care of the issue with the Insurance Defendants; and that there was no need to obtain a separate WC Insurance policy for EPMC, or any of the other "Alfieri entities."

32.    The foregoing notwithstanding, the coverage issue raised by CRIB simply could have been resolved – as suggested in the CRIB Letter itself – by the Broker Defendants advising Plaintiffs and procuring on their behalf separate "one off" WC Insurance policies for EPMC and the other Alfieri affiliates that did not share majority common ownership with Alfieri.  Nevertheless, the Broker Defendants elected not to do so in order to mask their prior negligent advice to Plaintiffs, upon which Plaintiffs reasonably relied.

33.    On January 13 and April 1, 2015, CRC emailed the Broker Defendants, advising them again that the Insurance Defendants still required an ERM 14 from Alfieri, providing additional information with respect to EPMC.  The Broker Defendants did not

8

forward copies of these emails to Plaintiffs, or notify them of the further advice received from the Insurance Defendants.

34.     On April 16, 2015, CRC emailed the Broker Defendants again, stating: "Please help the company [Zurich] is calling now for this. This is quite old.  Can you please help? Need ERM-14 completed."  The Broker Defendants again did not forward a copy of CRC's email to Plaintiffs, or notify them of the further advice received from the Insurance Defendants.

35.     On April 27, 2015, the Broker Defendants emailed CRC, stating: "there is not (sic) way to put this really on the ERM 14 so I am attaching letter for the WC Bureau. Please provide to them and advise if anything else is needed." Plaintiffs were not copied on this email, or supplied with a copy of the letter.

36.     Contrary to the explicit instructions contained in both the Crib Letter and CRC's earlier November 5, 2014 (10:45 a.m.) email to the Broker Defendants, which requested "a signed statement from the insured to support combining all of th[e] [Alfieri] entities" (see, supra), the "letter" referenced in and attached to the Broker Defendants' April 27, 2015 email was from the Broker Defendants themselves on Logan's letterhead (and not from Plaintiffs), was unsigned, and stated as follows: "Please be advised we are the insurance agent for the above insured and are responding to your 10/16/14 letter [the Crib Letter]. Please note Michael Alfieri manages 100% all the entities listed on the letter attached. Please let me know what other information, if any, you may need to satisfy your inquiry." (emphasis supplied)

37.     On April 29, 2015, an employee of EPMC – Roberto Pena ("**Pena**") – suffered a workplace injury, resulting in Alfieri's filing of a claim with the Broker

Defendants and the Insurance Defendants pursuant to the WC Policy. (the **"Pena Claim"**)
Zurich paid that claim.

38.     Upon information and belief, the Broker Defendants initially (and purposely)
reported the Pena Claim to the Insurance Defendants as having been suffered by an employee
of Alfieri, and not EPMC.

39.     On May 1, 2015, Alfieri advised the Broker Defendants that Pena was an
employee of EPMC, "not Alfieri LLC."

40.     On May 7, 2015 (at 8:17 a.m.), Zurich cancelled EPMC's coverage under the
WC Policy, issuing a Workers Compensation Change Endorsement thereto retroactive to
June 1, 2014.  Neither Zurich, nor CRC, notified Plaintiffs of said cancellation; nor did they
send a copy of the Change Endorsement to Plaintiffs; nor did they file a notice of
cancellation with the New Jersey Office of the Commissioner of Banking and Insurance,
together with a certified statement, as required by N.J.S.A. 43:15-81.

41.     On May 7, 2015 (at 9:19 a.m.), CRC emailed the Broker Defendants,
forwarding to them a copy of Zurich's 8:17 a.m. email, which stated:  "Since this matter is
still not resolved, we [Zurich] are endorsing the WC policy, back to inception, to remove all
named insureds [including EPMC] except the primary name [Alfieri]. As you (sic) this is a
compliance issue, and we have no other option at point in time. Of course, <u>we will not be
able to include these names [including EPMC] on the renewal either</u>. If you need these
entities covered under mono-line WC policies, please submit separate applications for the
renewal." (emphasis supplied)

42.     Neither CRC, nor the Broker Defendants, provided Plaintiffs with a copy of
the aforesaid email, or advised them of the issuance of the endorsement cancelling EPMC's

10

WC Insurance coverage, or that Plaintiffs were required to obtain separate policies to cover each insured.

43.     The foregoing notwithstanding, contemporaneously with Zurich's cancellation of EPMC's WC Insurance coverage, Handwerger met with Alfieri to discuss its (and EPMC's) insurance needs for the upcoming term, including the renewal of the WC Policy which was set to expire on June 1, 2015.  During that meeting, Handwerger falsely advised and confirmed to Alfieri that the WC Policy, covering both Alfieri and EPMC, still was in effect and that he was taking care of the policy's renewal.  Neither Handwerger, nor Logan, advised Plaintiffs that EPMC's WC Insurance had been cancelled, or that EPMC had been deleted as a named insured under the WC Policy, or that the only way for EPMC to be covered for WC Insurance was to purchase a "one off" policy.

44.     Following the aforesaid meeting, the Broker Defendants procured from and with the Insurance Defendants the Renewed WC Policy, effective as of June 1, 2015 and through June 1, 2016, which policy, unbeknownst to Plaintiffs, insured only Alfieri.

45.     On June 10, 2014, CRC forwarded to the Broker Defendants a "Confirmation of Coverage Bound," insuring only Alfieri.  The Broker Defendants did not forward a copy thereof to Plaintiffs, or advise them that only Alfieri was then covered by the Renewed WC Policy.

46.     On June 18, 2014, CRC forwarded to the Broker Defendants the Renewed WC Policy itself, insuring only Alfieri and requiring them to "review and advise [of] any discrepancy."  In inexcusable breach of the express terms of the policy, CRC advised the Broker Defendants: "please note this will be the only copy sent, policy will not be mailed."

## THE MORIARTY WORK-PLACE INJURY; CLAIM DENIED BY ZURICH

47.     On September 29, 2015, EPMC's employee – Moriarty - was injured while at work, allegedly suffering a serious injury precluding him from continued employment and requiring surgery and other significant medical treatment. (the **"Moriarty Claim"**)

48.     On October 2, 2015, Alfieri provided to the Broker Defendants a Workers Comp First Report of Injury form, notifying them of the Moriarty Claim.

49.     Zurich denied coverage of the Moriarty Claim, based upon its earlier cancellation of EPMC's WC Insurance coverage and its issuance of the Renewed WC Policy covering only Alfieri.  Accordingly, the Insurance Defendants refused, and continue to refuse, to pay to Moriarty workers compensation benefits including, but not limited to, his lost wages and medical expenses.

50.     On October 7, 2015 (at 8:21 a.m.), the Insurance Defendants advised Plaintiffs for the first time that the only WC Insurance coverage they had was for Alfieri, and not for EPMC.

51.     On October 7, 2015 (at 9:08 a.m.), Alfieri emailed Handwerger, stating: "Scott – this is unacceptable. Every time we have had a workers comp claim with Zurich there has been a problem, which holds up people being able to receive proper medical attention in a timely manner."

52.     On October 7, 2015 (at 11:30 a.m.), the Broker Defendants emailed CRC, requesting the Insurance Defendants to "correct [the Renewed WC Policy] as of inception to reflect the named insured entity Environmental Program Management Corp. ...." In that email, the Broker Defendants falsely claimed that "[a]pparently there was some mix up when

12

endorsement was issued last year to correct this and this name was intended to be on the renewal as per the FEIN which is listed on the current policy which belongs to them."

53.     On October 7, 2015 (at 11:50 a.m.), CRC emailed Zurich, requesting them to "correct" the policy to include EPMC.  At 12:44 p.m. that same day (October 7), CRC advised the Broker Defendants that Zurich had refused to "correct" the Renewed WC Policy.

54.     The foregoing notwithstanding, on October 7, 2015 (at 12:52 p.m.), Handwerger emailed Alfieri, falsely advising: "I am taking care of it.  For now just get [Moriarty] to send me [Handwerger] dr bills."

55.     Subsequent thereto and in a stark admission of culpability, the Broker Defendants voluntarily agreed to pay, and did pay, thousands of dollars of Moriarty's medical bills and related expenses, including $4,032 to Moriarty for back wages lost during his disability and $829.89 for lost vacation time; Handwerger nevertheless boasting to Alfieri that "I will make Zurich eat that cost."

56.     On October 9, 2015, the Broker Defendants emailed Plaintiffs, falsely advising: "Carrier had an issue with the renewal and information is being worked on to resolve this.  In the interim please have Mr. Moriarty go see a doctor as necessitated and send the bills to our office so that we can have them processed."

57.     On October 14, 2015, Handwerger emailed Moriarty's physician, stating that "[w]e will guarantee payment for any bodily injury treatment necessitated and directly related to this incident and will tender any bills advanced by our office to Zurich once there is a resolution in their system."

58.     Contrary to their prior "guaranty" to pay Moriarty's medical expenses and lost wages (on which both Plaintiffs and Moriarty relied), in December 2015, the Broker

13

Defendants suddenly refused to pay them, allegedly because they had just discovered that Moriarty purportedly suffered from a pre-existing condition which, in their view, relieved them of any further obligation or responsibility to pay his expenses or wages.

59.     As a result of the Broker Defendants' action, in May 2016, Moriarty filed the WC Action under Case No. 2016-7755, which proceeding still is, and will remain, pending for an extended period of time because the full extent of Moriarty's required medical treatment and expenses and disability status cannot yet be determined.

60.     Zurich has appeared in the WC Action and has denied coverage of the Moriarty Claim therein.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST ZURICH - DECLARATORY JUDGMENT

61.     Plaintiffs repeat and reallege Paragraphs "1" through "60" of this Complaint as if here fully set forth.

62.     By virtue of the facts and events hereinabove set forth, an actual case and controversy has arisen and presently exists between Plaintiffs and the Insurance Defendants with respect to Zurich's responsibility to provide WC Insurance coverage to EPMC on the Moriarty Claim.

63.     By reason of the foregoing, a judicial declaration is necessary, appropriate and required in order that the parties hereto may ascertain their respective rights and obligations, and to prevent any additional irreparable harm, damages or costs to any of the parties to this action.

**WHEREFORE,** Plaintiffs demand judgment against Zurich granting to them the following relief:

14

A.   Finding and declaring that EPMC is a named insured under the Renewed WC Policy;

B.   Compelling Zurich to provide full WC Insurance coverage to EPMC on account of and for the Moriarty Claim;

C.   Compelling Zurich to defend and indemnify EPMC in the WC Action;

D.   Compensatory, consequential and incidental damages, including, but not limited to, amounts measured by the fines and penalties which may be assessed against Plaintiffs in or as a result of the WC Action, or the Moriarty Claim, together with prejudgment interest thereon;

E.   Reasonable attorney's fees and litigation costs incurred by them in this action and in the WC Action; and

F.   Such other and further relief, and whether of an equitable or legal nature, as the Court deems necessary and proper in these circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE INSURANCE DEFENDANTS – BREACH OF STATUTE AND CONTRACT

64.   Plaintiffs repeat and reallege Paragraphs "1" through "60" of the Complaint as if here fully set forth.

65.   N.J.S.A. 43:15-81, provides, in relevant part: "No [workers compensation] policy shall be deemed to be cancelled until: (a) At least ten days' notice in writing of the election to terminate such contract is given by registered mail by the party seeking cancellation thereof to the other party thereto; and (b) Until the notice shall be filed in the office of the commissioner of banking and insurance, together with a certified statement that the notice provided for by paragraph "a" of this section has been given."

66.    In violation of N.J.S.A. 34:15-81, the Insurance Defendants failed to: (a) provide notice in writing to Plaintiffs of the cancellation of EPMC's WC Insurance coverage, and/or the endorsement to the WC Policy removing EPMC as a named insured thereunder; and (b) file a notice "in the office of the commissioner of banking and insurance, together with a certified statement that the notice provided for by paragraph "a" of [N.J.S.A. 34:15-81] ... has been given."

67.    "Part Six, Conditions: D, Cancellation" of the WC Policy and Renewed WC Policy further provided that their terms and conditions could not be changed or cancelled (in whole or in part) unless "not less than ten days advance written notice stating when the cancellation is to take effect" was mailed by the Insurance Defendants to the insureds (Alfieri and EPMC) at the insureds' "mailing address shown in Item 1 of the Information Page" of the policy.

68.    The "mailing address shown in Item 1 of the Information Page" of both the WC Policy and the Renewed WC Policy was and is "Alfieri, LLC, 399 Thornall St, STE 15, Edison NJ 08837-2236."

69.    In material breach of the aforesaid provisions of the WC Policy and of the Renewed WC Policy, the Insurance Defendants' failed to provide notice in writing to Plaintiffs of the cancellation of EPMC's WC Insurance coverage, and/or of the endorsement to the WC Policy removing EPMC as a named insured thereunder, and failed to furnish Plaintiffs with the original or a copy of those policies.

70.    As a proximate result of the foregoing, the Insurance Defendants materially have breached the WC Policy and the Renewed WC Policy by failing to provide WC Insurance coverage to EPMC on account of the Moriarty Claim.

16

71.     As a proximate result of the Insurance Defendants' violation of statute and material breaches of contract as aforesaid, Plaintiffs have suffered, and continue to suffer, substantial damages, the precise amount of which to be determined following discovery and at trial.

**WHEREFORE,** Plaintiffs demand judgment against the Insurance Defendants, jointly and severally, granting to them the following relief:

A.     Compensatory, consequential and incidental damages, including, but not limited to, amounts measured by the fines and penalties which may be assessed against Plaintiffs in or as a result of the WC Action, or the Moriarty Claim, together with prejudgment interest thereon;

B.     Reasonable attorney's fees and litigation costs incurred by them in this action and in the WC Action; and

C.     Such other and further relief, and whether of an equitable or legal nature, as the Court deems necessary and proper in these circumstances.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## LOGAN – BREACH OF CONTRACT

72.     Plaintiffs repeat and reallege Paragraphs "1" through "60" of the Complaint as if here fully set forth.

73.     Logan and Plaintiffs entered into contracts, pursuant to which, among other things, Logan agreed to procure and place for the benefit of Plaintiffs and their employees full and appropriate WC Insurance as required by New Jersey law, for the periods June 1, 2014 through May 31, 2015, and June 1, 2015 through May 31, 2016. (the "**Brokerage Agreements**")

74.     In material breach of the Brokerage Agreements, Logan failed to procure and place the WC Insurance coverage required by Plaintiffs and New Jersey law.

75.     As a proximate result of Logan's breaches of contract as aforesaid, Plaintiffs have suffered, and continue to suffer, substantial damages, the precise amount of which to be determined following discovery and at trial.

**WHEREFORE**, Plaintiffs demand judgment against Logan, granting to them the following relief:

A.     Compensatory, consequential and incidental damages, including, but not limited to, amounts measured by the fines and penalties which may be assessed against Plaintiffs in or as a result of the WC Action, or the Moriarty Claim, together with prejudgment interest thereon;

B.     Reasonable attorney's fees and litigation costs incurred by them in this action and in the WC Action; and

C.     Such other and further relief, and whether of an equitable or legal nature, as the Court deems necessary and proper in these circumstances.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST LOGAN – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

76.     Plaintiffs repeat and reallege Paragraphs "1" through "60" and "73" of the Complaint as if here fully set forth.

77.     New Jersey implies a covenant of good faith and fair dealing into every contract entered into in this State, including, but not limited to, the Brokerage Agreements.

78.     Logan's actions and conduct as aforesaid constitute elementary and material breaches of the covenant of good faith and fair dealing implied by law into the Brokerage Agreements.

18

79.     As a proximate result of Logan's breaches of the implied covenant of good faith and fair dealing as aforesaid, Plaintiffs have suffered, and continue to suffer, substantial damages, the precise amount of which to be determined following discovery and at trial.

   **WHEREFORE**, Plaintiffs demand judgment against Logan, granting to them the following relief:

   A.     Compensatory, consequential and incidental damages, including, but not limited to, amounts measured by the fines and penalties which may be assessed against Plaintiffs in or as a result of the WC Action, or the Moriarty Claim, together with prejudgment interest thereon;

   B.     Reasonable attorney's fees and litigation costs incurred by them in this action and in the WC Action; and

   C.     Such other and further relief, whether of an equitable or legal nature, as the Court deems necessary and proper in these circumstances.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE BROKER DEFENDANTS - PROFESSIONAL MALPRACTICE

80.     Plaintiffs repeat and reallege paragraphs "1" through "59" of the Complaint as if here fully set forth.

81.     As Plaintiffs' insurance agents/brokers, the Broker Defendants owed to Plaintiffs a duty to utilize that degree of care, knowledge and skill ordinarily possessed and exercised by similar members of the insurance brokerage profession in good standing, as well as the level, knowledge and skill which the Broker Defendants represented to Plaintiffs they possessed, in order to, among other things: (i) properly procure and place for the benefit of Plaintiffs and their employees full and appropriate WC Insurance as required by New Jersey

19

law, for the periods June 1, 2014 through May 31, 2015, and June 1, 2015 through May 31, 2016.

82.     As a result of their actions, inactions, representations and misrepresentations set forth and described in factual detail herein above, the Broker Defendants deviated from the standard of care expected of similarly situated members of the insurance brokerage profession and committed gross professional malpractice in violation of their duties owed to Plaintiffs.

83.     Plaintiffs did not contribute in any manner whatsoever to the conduct of the Broker Defendants herein complained of.

84.     As a direct and proximate result of the Broker Defendants' negligence, malfeasance and professional malpractice as aforesaid, Plaintiffs have suffered, and continue to suffer, substantial damages, the precise amount of which to be determined following discovery and at trial.

**WHEREFORE**, Plaintiffs demand judgment against the Broker Defendants, jointly and severally, granting to them the following relief:

A.     Compensatory, consequential and incidental damages,  including, but not limited to, any fines and penalties incurred by Plaintiffs in or as a result of the WC Action, or the Moriarty Claim, together with prejudgment interest thereon;

B.     Reasonable attorney's fees and litigation costs incurred by them in this action and in the WC Action; and

C.     Such other and further relief, and whether of an equitable or legal nature, as the Court deems necessary and proper in these circumstances.

20

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST
### CRC - PROFESSIONAL MALPRACTICE/NEGLIGENCE

85.  Plaintiffs repeat and reallege Paragraphs "1" through "60" of the Complaint as if here full set forth.

86.  In its capacity as the "producer" engaged by the Broker Defendants and Zurich, CRC owed to Plaintiffs a duty to utilize that degree of care, knowledge and skill ordinarily possessed and exercised by similar members of the insurance profession in good standing in order to, among other things: (i) properly procure and place for the benefit of Plaintiffs and their employees full and appropriate WC Insurance as required by New Jersey law, for the periods June 1, 2014 through May 31, 2015, and June 1, 2015 through May 31, 2016.

87.  As a result of their actions, inactions, representations and misrepresentations set forth and described in factual detail herein above, CRC deviated from the standard of care expected of similarly situated members of the insurance profession and committed gross negligence in violation of their duties owed to Plaintiffs.

88.  Plaintiffs did not contribute in any manner whatsoever to the conduct of CRC herein complained of.

89.  As a direct and proximate result of CRC's professional malpractice and gross negligence as aforesaid, Plaintiffs have suffered, and continue to suffer, substantial damages, the precise amount of which to be determined following discovery and at trial.

**WHEREFORE**, Plaintiffs demand judgment against CRC granting to them the following relief:

A.  Compensatory, consequential and incidental damages, including, but not limited to, amounts measured by the fines and penalties which may be

21

assessed against Plaintiffs in or as a result of the WC Action, or the Moriarty

Claim, together with prejudgment interest thereon;

B.     Reasonable attorney's fees and litigation costs incurred by them in this action

and in the WC Action; and

C.     Such other and further relief, and whether of an equitable or legal nature, as

the Court deems necessary and proper in these circumstances.

### AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST
### THE BROKER DEFENDANTS – PROMISSORY ESTOPPEL

90.     Plaintiffs repeat and reallege Paragraphs "1" through "60" of the Complaint as if here

fully set forth.

91.     The Broker Defendants made a clear and definite promise to Plaintiffs, among other

things, to properly procure and place for the benefit of Plaintiffs and their employees full and

appropriate WC Insurance as required by New Jersey law, for the periods June 1, 2014 through May

31, 2015, and June 1, 2015 through May 31, 2016.

92.     Plaintiffs detrimentally relied on the Broker Defendants' promises as aforesaid by,

among other things, not otherwise procuring and securing a separate WC Insurance policy for

EPMC, either for the period June 1, 2014 through May 31, 2015, or for June 1, 2015 through May

31, 2016.

93.     Plaintiffs' reliance on the Broker Defendants' promises as aforesaid was reasonable

and justifiable because of, among other things, the Broker Defendants' possessed superior skill,

knowledge and experience in the insurance business, as an insurance broker and particularly with

regard to the placement of WC Insurance.

22

94.     The Broker Defendants failed to perform their promises to Plaintiffs as described in factual detail herein above.

95.     As a direct and proximate result of the Broker Defendants' failure to perform their promises as aforesaid, Plaintiffs have suffered, and continue to suffer, substantial damages, the precise amount of which to be determined following discovery and at trial

**WHEREFORE**, Plaintiffs demand judgment against the Broker Defendants, jointly and severally, granting to them the following relief:

A.     Compensatory, consequential and incidental damages, including, but not limited to, amounts measured by the fines and penalties which may be assessed against Plaintiffs in or as a result of the WC Action, or the Moriarty Claim, together with prejudgment interest thereon;

B.     Reasonable attorney's fees and litigation costs incurred by them in this action and in the WC Action; and

C.     Such other and further relief, and whether of an equitable or legal nature, as the Court deems necessary and proper in these circumstances.

**Dated:  Red Bank, New Jersey**
**April 10, 2017**

LEBENSFELD SHARON & SCHWARTZ P.C.,
*Attorneys for Plaintiffs Alfieri, LLC and*
*Environmental Program Management Corp.*

By: *Alan M. Lebensfeld*
           Alan M. Lebensfeld

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Alan M. Lebensfeld, Esq. hereby is designated as trial counsel herein.

**Dated: Red Bank, New Jersey**
**April 10, 2017**

**LEBENSFELD SHARON & SCHWARTZ P.C.**
*Attorneys for Plaintiffs Alfieri, LLC and*
*Environmental Program Management Corp.*

By: _____
         Alan M. Lebensfeld

## CERTIFICATION PURSUANT TO RULE 4:5-1

The undersigned hereby certifies that to the best of his knowledge and belief, this matter is

not the subject of any other action or arbitration proceeding other than the WC Action, and no other

parties should be joined in this action pursuant to R. 4:5-1 at this time.

**Dated: Red Bank, New Jersey**          **LEBENSFELD SHARON & SCHWARTZ P.C.,**
     **April 10, 2017**                              *Attorneys for Plaintiffs Alfieri, LLC and*
                                                                    *Environmental Program Management Corp.,*

                                                      By: _____
                                                               Alan M. Lebensfeld

24

**Appendix XII-B1**

|  | **CIVIL CASE INFORMATION STATEMENT**<br>**(CIS)**<br>Use for initial Law Division<br>Civil Part pleadings (not motions) under Rule 4:5-1.<br>**Pleading will be rejected for filing, under Rule 1:5-6(c),**<br>**if information above the black bar is not completed**<br>**or attorney's signature is not affixed.** | FOR USE BY CLERK'S OFFICE ONLY<br>PAYMENT TYPE: ☐CK ☐CG ☐CA<br>CHG/CK NO.:<br>AMOUNT:<br>OVERPAYMENT:<br>BATCH NUMBER: |
|---|---|---|

FILED & RECEIVED #3
2017 APR 11  A 11: 47
CIVIL OFFICE
MIDDLESEX VICINAGE

| ATTORNEY/PRO SE NAME<br>Alan M. Lebensfeld Esq. | TELEPHONE NO.<br>732-530-4600 | COUNTY OF VENUE<br>Middlesex |
|---|---|---|
| FIRM NAME (if applicable)<br>Lebensfeld, Sharon & Schwartz P.C. | | DOCKET NO. (when available)<br>L-2182-17 |
| OFFICE ADDRESS<br>140 Broad Street<br>Red Bank, NJ 07701 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND  ☒ YES  ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Alfieri, LLC and Environmental<br>Program Mgmt Corp. | CAPTION<br>Alfieri, LLC and Environmental Program Mgmt Corp.<br>vs. Zurich American Insurance Co., et al |
|---|---|
| CASE TYPE NO.<br>(See reverse side for listing)<br>508 | HURRICANE SANDY<br>RELATED?<br>☐ YES  ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW<br>REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☒ YES  ☐ NO | IF YES, LIST DOCKET NUMBERS<br>Workers Compensation Matter - CP-2016-7755 |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES  ☒ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE  ☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST<br>OR RECURRENT RELATIONSHIP?<br>☐ YES  ☒ NO | IF YES, IS THAT RELATIONSHIP<br>☐ EMPLOYER-EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain) _____<br>☐ FAMILIAL  ☐ BUSINESS  _____ |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ☒ NO |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR
ACCELERATED DISPOSITION:

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES  ☒ NO | IF YES, PLEASE IDENTIFY THE<br>REQUESTED ACCOMMODATION: |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ YES  ☒ NO | IF YES, FOR WHAT LANGUAGE: |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be
redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

ATTORNEY SIGNATURE

Powered by
HOTdocs

Printed by ALL-STATE LEGAL®<br>A Division of ALL-STATE International, Inc.<br>www.aslegal.com   800.222.0510       Page 1

| SIDE 2 |  | **CIVIL CASE INFORMATION STATEMENT**<br>**(CIS)**<br>Use for initial pleadings (not motions) under Rule 4:5-1 |
|---|---|---|

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I — 150 days' discovery
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (briefly describe nature of action) _____ |

### Track II — 300 days' discovery
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE - PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE - PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | TORT – OTHER |

### Track III — 450 days' discovery
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

### Track IV — Active Case Management by Individual Judge/450 days' discovery
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

### Multicounty Litigation (MCL) (Track IV)
| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 292 | PELVIC MESH/BARD |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR Hip Stem Components |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 289 | REGLAN | 601 | ASBESTOS |
| 289 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 | PROPECIA |
| 291 | PELVIC MESH/GYNECARE | | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."

**Please check off each applicable category:**  ☐ **Putative Class Action**   ☐ **Title 59**

30 - Civil Case Information Statement (CIS)
Appendix XII-B1; CN 10517
Rev. 8/16   Effective 10/1/16   P10/16



Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510   Page 2